IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 10-663-4** |
| **JAQUEL CREWS,**<br>**a/k/a "Quelly"** | : | |

# PRETRIAL DETENTION ORDER

AND NOW, this day of November, 2010, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court FINDS that:

(a) the government has proven by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) that the government has proven by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court MAKES the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

## A. Probable Cause And The Evidence In This Case

1. The grand jury found probable cause to believe that the defendant has committed a violation of 21 U.S.C.§ 841(a)(1), with his participation in a long-term conspiracy

to distribute 5 kilograms or more of cocaine and to distribute cocaine base.

2. The evidence in this case is substantial and shows the following:

Defendant Jaquel Crews, a/k/a “Quelly,” with co-defendants Emmanuel Moore, a/k/a “Duck,” Vincent Crews, a/k/a “Vinny,” and Mark Miller, a/k/a “Sharkey,” and others formed and maintained a multi-million dollar cocaine and crack cocaine distribution association in the Frankford section of Philadelphia, Pennsylvania, trafficking hundreds of kilograms of cocaine and crack cocaine in Frankford and other areas of Philadelphia.

Jaquel Crews and his co-defendants and others pooled money to purchase multi-kilogram quantities of cocaine, received delivery of kilogram quantities of cocaine, packaged cocaine for sale, sold kilogram quantities of cocaine, cooked and packaged cocaine base, or “crack cocaine,” for sale, and used others to sell cocaine and crack cocaine.

For several years during the conspiracy, Jaquel Crews, with his co-defendants and others, delivered cash to a California-based cocaine supplier, transporting cash for the purchase of cocaine on airline flights from Philadelphia to Los Angeles, California and Las Vegas, Nevada.

3. The strength and nature of the case against the defendant for his participation in the conspiracy to distribute hundreds of kilograms of cocaine and to distribute crack cocaine, and the corresponding probability that the defendant will be incarcerated for a lengthy period of time, establishes his danger to the community and increases the high risk that the defendant will not appear as required by the Court.

**B. Maximum Penalties**

1. The defendant is charged with 1 count of conspiracy to distribute 5 kilograms or more of cocaine and to distribute cocaine base, both Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). The statutory maximum penalty for distribution of 5 kilograms or more of cocaine is life imprisonment, and a fine of $8,000,000, as Jaquel Crews has a prior felony drug conviction.

2. There is also an applicable mandatory minimum sentence of 20 years imprisonment on the charge of conspiracy to distribute 5 kilograms or more of cocaine base, as Jaquel Crews has a prior felony drug conviction.

3. Under the Sentencing Guidelines, even assuming the relevant conduct involves conspiracy to distribute just 50 kilograms of cocaine (although the government believes that evidence will show distribution of hundreds of kilograms of cocaine), the guidelines would result in an offense level of 36, a Criminal History category of II and a guideline range of 210-262 months in prison, and Jaquel Crews faces a mandatory sentence of 240 months with his prior felony drug conviction.

4. Accordingly, the defendant has a substantial incentive to flee.

C. **Criminal Record**

1. Jaquel Crews has a prior federal drug conviction.

On September 28, 1994, Jaquel Crews was arrested on federal drug trafficking charges brought in the Eastern District of Pennsylvania. He was convicted , and, on February 21, 1996, he was sentenced to 56 months imprisonment, and 4 years supervised release.

2. Jaquel Crews has a number of prior arrests in Philadelphia.

On October 9, 1998, JAQUEL CREWS was arrested in Philadelphia on charges of theft, insurance fraud and criminal conspiracy. He was acquitted of those charges on February 2, 1999.

On December 6, 1993, JAQUEL CREWS was arrested in Philadelphia for contempt of court. That charge was dismissed.

On December 6, 1993, JAQUEL CREWS was arrested in Philadelphia on charges of robbery, simple assault, theft, and terroristic threats. Those charges were dismissed.

On January 30, 1994, JAQUEL CREWS was arrested in Philadelphia on charges of carrying a firearm with out a license and in a public place. Those charges were dismissed.

On September 27, 2001, JAQUEL CREWS was arrested in Philadelphia on charges of simple assault, possession of a weapon, and reckless endangerment. Those charges were withdrawn.

On February 3, 2004, JAQUEL CREWS was arrested in Philadelphia on charges of simple assault, reckless endangerment, and criminal mischief. Those charges were withdrawn.

D. **Lack Of Ties To The Community/Risk of Flight**

1. The government acknowledges that Jaquel Crews has ties to this jurisdiction, as he is a United States citizen, has resided in the Philadelphia and southern New Jersey area for some period of time, and is married He is currently in custody at the Federal Detention Center in Philadelphia.

2. Jaquel Crews informed Pretrial Services that he is self-employed and has been employed in the construction business for the past ten years. The government is not aware of any legitimate employment held by Crews. Moreover, Crews has provided completely

different financial information to the IRS and to banks when seeking mortgages on properties, all of which indicates a complete lack of candor to the Court, Pretrial Services and/or banking institutions.

For example, information from Payroll Solution Services stated that Jaquel Crews was paid the following by Deric Dandridge/Credit Rebuilders: 2004 - $20,800; 2005 - $21,200; and 2006 - $8.800. Social Security Administration records for Crews reflect the following wages from Deric Dandridge/Credit Rebuilders: 2003 - $8,400; 2004 - $20,800; 2006 - $21,200. Employees of Deric Dandridge/Credit Rebuilders have informed law enforcmement agents, however, that Crews never worked for Deric Dandridge/Credit Rebuilders. Moreover, information provided by Crews to various banks in connection with mortgage and car loan applications tell an entirely different tale about his alleged employment with Deric Dandridge/Credit Rebuilders.

In April of 2006, Crews reported on a loan application for 1684 Margaret Street, Philadelphia, PA that he was employed by Credit Rebuilders with monthly income of more than $6,000 per month, and he submitted an earnings statement, showing, as of April 14, 2006, earnings of $21,750 from Credit Rebuilders.

In November of 2006, Crews reported on a loan application for 4834 Tackawanna Street, Philadelphia, PA that he was employed by Credit Rebuilders with monthly income of more than $7,000 per month, and he submitted an earnings statement, showing, as of November 3, 2006, earnings of $72,072 from Credit Rebuilders.

Also, in November of 2006, Crews reported on a loan application for 1634 Foulkrod Street, Philadelphia, PA that he was employed by Credit Rebuilders with monthly

income of $7,100 per month, and reported on a loan application for 4906 Cottage Street, Philadelphia, PA that he was employed by Credit Rebuilders with monthly income of $7,200 per month.

In December of 2006, Crews reported on a loan application for 4635 Ditman Street, Philadelphia, PA that he was employed by Credit Rebuilders with monthly income of $7,600 per month.

In June of 2005, Crews purchased a 2003 Mercedes Benz from R&S Imports and reported in his loan application that he was employed by Credit Rebuilders with monthly income of $7,500 per month.

In May of 2004, Crews purchased a 2004 Dodge Ram truck from Daimler/Chrysler and reported in his loan application that he was employed by Credit Rebuilders with monthly income of $6,700 per month.

Jaquel Crews also has stated other employment in the past.

In February 2003, Crews reported on a loan application for 1829 Fillmore Street, Philadelphia, PA that he was employed as a manager at How You Wannit barbershop with a monthly income of $5,233, and provided W-2 forms showing wages of $60,900 for 2001 and $64,799 for 2002 from that barbershop.

In 2001, 2002 and 2003, while on federal supervised release, Crews reported to the United States Probation Office in Philadelphia that he worked for MJM Development (a company allegedly owned by co-defendant Mark Miller).

In October of 2003, Crews filed the following tax returns: for 2001 - reporting other income of $15,600; for 2002 - reporting other income of $20,400. There is no record of a

federal tax return filed by Crews for 2003. In January 2005, Crews filed a tax return for 2004 - reporting wages of $20,800 and total income of $52,066. In May 2008, Crews filed the following tax returns: for 2005 - reporting wages of $21,200, rent, etc. of $32,657, and other income of $30,000 (gambling winnings from Marina District Development Company LLC); for 2006 - reporting wages of $8,800, and rent., etc. of $34,857. Also, in May 2008, Jaquel Crews and Jesseca Crews filed a joint tax return - reporting wages of $24,799, capital gains of $51,995, rents, etc. of $13,951

E. Rebuttable Presumption

1. As there is probable cause to believe that the defendant committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, there exists a rebuttable presumption that no condition of release, or combination of conditions, will reasonably assure the appearance of the defendant as required and the safety of the community. The defendant has failed to rebut this presumption.

2. In addition, the defendant has attempted to tamper with a potential witness, advising that witness to serve time in prison rather than providing truthful information to federal law enforcement agents and cooperating with a federal investigation of drug trafficking involving the defendant.

Therefore, it is ORDERED that:

a. the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

b. the defendant be afforded reasonable opportunity for private consultation with counsel; and

c. on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**BY THE COURT:**

______________________________________

**HONORABLE CAROL S. MOORE WELLS**
**UNITED STATES MAGISTRATE JUDGE**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| **v.** | : | **CRIMINAL NO. 10-663-3** |
| **JAQUEL CREWS,**<br>**a/k/a "Quelly"** | : | |

**GOVERNMENT'S AMENDED MOTION AND MEMORANDUM FOR**
**HEARING AND DEFENDANT'S PRETRIAL DETENTION**

The United States of America, by Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and K.T. Newton, Assistant United States Attorney, moves for a detention hearing[1] and pretrial detention of the defendant pursuant to 18 U.S.C. § 3142(e). The government seeks this Order, because no condition or combination of conditions will reasonably assure the defendant's appearance as required or the safety of the community.[2]

---

[1] Under 18 U.S.C. § 3142(f), a judicial officer shall hold a detention hearing upon motion of the government in a case, as here, which involves an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. *See* 18 U.S.C. § 3142(f)(1)(C).

[2] The government must prove by a preponderance of the evidence that no conditions of release reasonably will assure the defendant's appearance <u>or</u> prove by clear and convincing evidence that no conditions of release will assure the safety of the community. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).

## I. THE FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

### A. Probable Cause And The Evidence In This Case

1. The grand jury found probable cause to believe that the defendant has committed a violation of 21 U.S.C.§ 841(a)(1), with his participation in a long-term conspiracy to distribute 5 kilograms or more of cocaine and to distribute cocaine base.

2. The evidence in this case is substantial and shows the following:

Defendant Jaquel Crews, a/k/a "Quelly," with co-defendants Emmanuel Moore, a/k/a "Duck," Vincent Crews, a/k/a "Vinny," and Mark Miller, a/k/a "Sharkey," and others formed and maintained a multi-million dollar cocaine and crack cocaine distribution association in the Frankford section of Philadelphia, Pennsylvania, trafficking hundreds of kilograms of cocaine and crack cocaine in Frankford and other areas of Philadelphia.

Jaquel Crews and his co-defendants and others pooled money to purchase multi-kilogram quantities of cocaine, received delivery of kilogram quantities of cocaine, packaged cocaine for sale, sold kilogram quantities of cocaine, cooked and packaged cocaine base, or "crack cocaine," for sale, and used others to sell cocaine and crack cocaine.

For several years during the conspiracy, Jaquel Crews, with his co-defendants and others, delivered cash to a California-based cocaine supplier, transporting cash for the purchase of cocaine on airline flights from Philadelphia to Los Angeles, California and Las Vegas, Nevada.

3. The strength and nature of the case against the defendant for his participation in the conspiracy to distribute hundreds of kilograms of cocaine and to distribute crack cocaine, and the corresponding probability that the defendant will be incarcerated for a lengthy period of time, establishes his danger to the community and increases the high risk that the defendant will not appear as required by the Court.

**B. <u>Maximum Penalties</u>**

1. The defendant is charged with 1 count of conspiracy to distribute 5 kilograms or more of cocaine and to distribute cocaine base, both Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). The statutory maximum penalty for distribution of 5 kilograms or more of cocaine is life imprisonment, and a fine of $8,000,000, as Jaquel Crews has a prior felony drug conviction.

2. There is also an applicable mandatory minimum sentence of 20 years imprisonment on the charge of distribution of 5 kilograms or more of cocaine, as Jaquel Crews has a prior felony drug conviction.

3. Under the Sentencing Guidelines, even assuming the relevant conduct involves conspiracy to distribute just 50 kilograms of cocaine (although the government believes that evidence will show distribution of hundreds of kilograms of cocaine), the guidelines would result in an offense level of 36, a Criminal History category of II and a guideline range of 210-262 months in prison, and Jaquel Crews faces a mandatory sentence of 240 months with his prior felony drug conviction.

4. Accordingly, the defendant has a substantial incentive to flee.

**C. Criminal Record**

1. Jaquel Crews has a prior federal drug conviction.

On September 28, 1994, Jaquel Crews was arrested on federal drug trafficking charges brought in the Eastern District of Pennsylvania. He was convicted , and, on February 21, 1996, he was sentenced to 56 months imprisonment, and 4 years supervised release.

2. Jaquel Crews has a number of prior arrests in Philadelphia.

On October 9, 1998, JAQUEL CREWS was arrested in Philadelphia on charges of theft, insurance fraud and criminal conspiracy. He was acquitted of those charges on February 2, 1999.

On December 6, 1993, JAQUEL CREWS was arrested in Philadelphia for contempt of court. That charge was dismissed.

On December 6, 1993, JAQUEL CREWS was arrested in Philadelphia on charges of robbery, simple assault, theft, and terroristic threats. Those charges were dismissed.

On January 30, 1994, JAQUEL CREWS was arrested in Philadelphia on charges of carrying a firearm with out a license and in a public place. Those charges were dismissed.

On September 27, 2001, JAQUEL CREWS was arrested in Philadelphia on charges of simple assault, possession of a weapon, and reckless endangerment. Those charges were withdrawn.

On February 3, 2004, JAQUEL CREWS was arrested in Philadelphia on charges of simple assault, reckless endangerment, and criminal mischief. Those charges were withdrawn.

**D. Lack Of Ties To The Community/Risk of Flight**

1. The government acknowledges that Jaquel Crews has ties to this jurisdiction, as he is a United States citizen, has resided in the Philadelphia and southern New Jersey area for some period of time, and is married He is currently in custody at the Federal Detention Center in Philadelphia.

2. Jaquel Crews informed Pretrial Services that he is self-employed and has been employed in the construction business for the past ten years. The government is not aware of any legitimate employment held by Crews. Moreover, Crews has provided completely different financial information to the IRS and to banks when seeking mortgages on properties, all

of which indicates a complete lack of candor to the Court, Pretrial Services and/or banking institutions.

For example, information from Payroll Solution Services stated that Jaquel Crews was paid the following by Deric Dandridge/Credit Rebuilders: 2004 - $20,800; 2005 - $21,200; and 2006 - $8.800. Social Security Administration records for Crews reflect the following wages from Deric Dandridge/Credit Rebuilders: 2003 - $8,400; 2004 - $20,800; 2006 - $21,200. Employees of Deric Dandridge/Credit Rebuilders have informed law enforcmement agents, however, that Crews never worked for Deric Dandridge/Credit Rebuilders. Moreover, information provided by Crews to various banks in connection with mortgage and car loan applications tell an entirely different tale about his alleged employment with Deric Dandridge/Credit Rebuilders.

In April of 2006, Crews reported on a loan application for 1684 Margaret Street, Philadelphia, PA that he was employed by Credit Rebuilders with monthly income of more than $6,000 per month, and he submitted an earnings statement, showing, as of April 14, 2006, earnings of $21,750 from Credit Rebuilders.

In November of 2006, Crews reported on a loan application for 4834 Tackawanna Street, Philadelphia, PA that he was employed by Credit Rebuilders with monthly income of more than $7,000 per month, and he submitted an earnings statement, showing, as of November 3, 2006, earnings of $72,072 from Credit Rebuilders.

Also, in November of 2006, Crews reported on a loan application for 1634 Foulkrod Street, Philadelphia, PA that he was employed by Credit Rebuilders with monthly income of $7,100 per month, and reported on a loan application for 4906 Cottage Street,

Philadelphia, PA that he was employed by Credit Rebuilders with monthly income of $7,200 per month.

In December of 2006, Crews reported on a loan application for 4635 Ditman Street, Philadelphia, PA that he was employed by Credit Rebuilders with monthly income of $7,600 per month.

In June of 2005, Crews purchased a 2003 Mercedes Benz from R&S Imports and reported in his loan application that he was employed by Credit Rebuilders with monthly income of $7,500 per month.

In May of 2004, Crews purchased a 2004 Dodge Ram truck from Daimler/Chrysler and reported in his loan application that he was employed by Credit Rebuilders with monthly income of $6,700 per month.

Jaquel Crews also has stated other employment in the past.

In February 2003, Crews reported on a loan application for 1829 Fillmore Street, Philadelphia, PA that he was employed as a manager at How You Wannit barbershop with a monthly income of $5,233, and provided W-2 forms showing wages of $60,900 for 2001 and $64,799 for 2002 from that barbershop.

In 2001, 2002 and 2003, while on federal supervised release, Crews reported to the United States Probation Office in Philadelphia that he worked for MJM Development (a company allegedly owned by co-defendant Mark Miller).

In October of 2003, Crews filed the following tax returns: for 2001 - reporting other income of $15,600; for 2002 - reporting other income of $20,400. There is no record of a federal tax return filed by Crews for 2003. In January 2005, Crews filed a tax return for 2004 -

reporting wages of $20,800 and total income of $52,066. In May 2008, Crews filed the following tax returns: for 2005 - reporting wages of $21,200, rent, etc. of $32,657, and other income of $30,000 (gambling winnings from Marina District Development Company LLC); for 2006 - reporting wages of $8,800, and rent., etc. of $34,857. Also, in May 2008, Jaquel Crews and Jesseca Crews filed a joint tax return - reporting wages of $24,799, capital gains of $51,995, rents, etc. of $13,951

### E. Rebuttable Presumption

1. As there is probable cause to believe that the defendant committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, there exists a rebuttable presumption that no condition of release, or combination of conditions, will reasonably assure the appearance of the defendant as required and the safety of the community. The defendant has failed to rebut this presumption.

2. In addition, the defendant has attempted to tamper with a potential witness, advising that witness to serve time in prison rather than providing truthful information to federal law enforcement agents and cooperating with a federal investigation of drug trafficking involving the defendant.

## II. THE LAW

1. Narcotics trafficking poses a risk of flight. As Congress explained:

> Flight to avoid prosecution is particularly high among persons charged with major drug offenses....these persons have both the resources and foreign contacts to escape to other countries with relative ease...even the prospect of forfeiture of bond in the hundreds of thousands of dollars has proven to be ineffective in assuring the appearance of major drug traffickers.

S. Rep. No. 225, 98th Cong., 2d Sess. 12-12, *reprinted* in 1984 U.S. Code Cong. & Ad. News 3182, 3195-96, 3203.

2. The legislative history of the Comprehensive Crime Control Act of 1983 indicates that Congress found that community or family ties do not weigh heavily in the risk of flight analysis:

> [Congress] is aware of growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community...[Congress] does not intend that a court conclude there is no risk of flight on the basis of community ties alone.

Sen. Comm. on Judiciary, *Comprehensive Crime Control Act of 1983*, S. Rep. No. 98-225, 98th Cong., 1st Sess. 24, 25 (1983).

3. Congress also has declared that drug trafficking is a danger to the community. *Id*. (drug dealers engage in continuing patterns of criminal activity; they pose a "significant" risk of pretrial recidivism). "Safety" as comprehended by the Bail Reform Act includes a reasonable assurance that drug dealing will not continue. *United States v. Perry*, 788 F.2d 100, 112-13 (3d Cir. 1986); *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985).

## III. CONCLUSION

Nothing short of 24-hour custody and supervision can ensure the appearance of this defendant and the safety of the community. The conditions of release enumerated in the detention statute at Section 3142(c) would serve only to inform the Court, after the fact, that the defendant had fled or resumed his criminal career.

For all of the reasons stated above, the United States respectfully requests that its motion for pretrial detention be granted.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney
Eastern District of Pennsylvania

___________/s/_____________
K.T. NEWTON
Assistant U. S. Attorney

Dated: November 15, 2010

**CERTIFICATE OF SERVICE**

I certify that, on this day, I filed the government's amended detention motion via ECF and thus caused it to be served on:

Christopher Lyden, Esquire
clyden185@verizon.net
Attorney for Defendant Jaquel Crews

____________/s/____________________
K.T. NEWTON
Assistant United States Attorney

Dated: November 15, 2010