**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **V.** | : | **CRIMINAL NO. 10-663-4** |
| **JAQUEL CREWS** | : | |

**ORDER**

AND NOW this ________ day of ____________, 2010, upon consideration of the Government's Motion For Disqualification Of Defense Counsel, and the arguments of counsel at a hearing held on , 2010, IT IS HEREBY ORDERED that the Government's Motion is Granted.

IT IS FURTHER ORDERED that Joseph C. Santaguida is disqualified from representing defendant JAQUEL CREWS.

BY THE COURT:

______________________________
JOHN R. PADOVA
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 10-663-4 |
| JAQUEL CREWS | : | |

**GOVERNMENT'S MOTION FOR**
**DISQUALIFICATION OF DEFENSE COUNSEL**

The United States of America, by and through its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and K.T. Newton, Assistant United States Attorney, respectfully requests that the Court hold a hearing for the purpose of determining whether to disqualify Joseph Santaguida, Esq. from representing defendant Jaquel Crews on the grounds of a conflict of interest, and in support of its motion states as follows:

1. On November 3, 2010, a Grand Jury sitting in the Eastern District of Pennsylvania returned a superseding Indictment charging Jaquel Crews and others, in Count Five, with conspiracy to distribute five kilograms or more of cocaine and to distribute cocaine base.

2. On November 9, 2010, Jaquel Crews made his initial appearance on the charge in the superseding indictment, and the government asked for three days in which to file a motion for pretrial detention. The detention hearing and arraignment for Jaquel Crews was set for Friday, November 12, 2010 before Magistrate Judge L. Felipe Restrepo.

3. On Friday, November 12, 2010, Joseph Santaguida made his appearance for Jaquel Crews for the arraignment and detention hearing. At that time, counsel for the government informed Mr. Santaguida that Mr. Santaguida had represented a cooperating witness in this case, and, therefore, Mr. Santaguida could not represent Jaquel Crews. Counsel for the government and Mr. Santaguida also had a sidebar conference with Magistrate Judge Restrepo concerning this issue, and counsel for the government agreed, that, for the purposes of an initial appearance and the detention hearing that day, the government would not ask for Mr. Santaguida's disqualification that day, but, with the clear understanding that Mr. Santaguida could not continue to represent Jaquel Crews in this matter.

4. Magistrate Judge Restrepo continued the detention hearing to Monday, November 15, 2010 to allow Jaquel Crews time to find potential properties to post for bond.

5. On Monday, November 15, 2010, with Mr. Santaguida still representing Jaquel Crews, Magistrate Judge Restrepo granted the government's motion for pretrial detention, finding that the properties put forth by Jaquel Crews' relatives at that time did not satisfy conditions for pretrial release. Counsel for the government also reiterated to Mr. Santaguida that he could not continue to represent Jaquel Crews, given the conflict with his representation of a cooperating witness against Jaquel Crews.

6. On Thursday, November 18, 2010, Mr. Santaguida called counsel for the government to arrange for a conference call with Magistrate Judge Restrepo on the issue of posting another property for bail for Jaquel Crews, and counsel for the government again reminded Mr. Santaguida of his conflict through his representation of a cooperating witness.

7. As of Monday, November 22, 2010, Mr. Santaguida had not yet withdrawn from representation of Jaquel Crews. In a conference call with Magistrate Judge Restrepo and Mr. Santaguida, counsel for the government again raised the issue of the conflict and informed Magistrate Judge Restrepo and Mr. Santaguida that the government would be filing a motion for Mr. Santaguida's disqualification from the representation of Jaquel Crews based on Mr. Santaguida's representation of a cooperating witness in this case.

8. Mr. Santaguida has represented a witness who, if Jaquel Crews chooses to go to trial, will be testifying against Jaquel Crews with respect to drug trafficking activities over a number of years.

9. Mr. Santaguida certainly is aware of, and has admitted, the conflict and the fact that he cannot continue to represent Jaquel Crews. That representation, therefore, should not be allowed to continue any further. Rather, this representation should end immediately.

10. Even if both Jaquel Crews and the cooperating witness were to state to the Court that they intend to waive their right to the effective assistance of counsel insofar as conflicts of interest make Mr. Santaguida ineffective, the Government respectfully requests that ethical considerations and the interests of fairness justify disqualification of Mr. Santaguida now. In performing this analysis, the Court must also consider the appearance of fairness and propriety in order that the public maintain confidence in the integrity of the federal criminal justice system.

11. It is the Government's position that this Court cannot vindicate its own institutional interest in the integrity of the proceedings if attorney Joseph Santaguida were permitted to continue to represent Jaquel Crews in this case.

12. The Government has advised Mr. Santaguida of the actual conflicts of interest that exist and has suggested that Mr. Santaguida voluntarily withdraw from the case. As of Monday, November 22, 2010, Mr. Santaguida had declined to do so.

13. The Government is mindful of every defendant's qualified right to counsel of his choice. The Government has carefully examined the evidence in this case with an eye toward the possible alternatives to the remedy of disqualification. For the reasons set forth above, the disqualification of attorney Joseph Santaguida is required.

## MEMORANDUM OF LAW

### A. The Legal Standard

The general principles governing disqualification of defense counsel because of a conflict of interest are well-established in this Circuit. A criminal defendant has a constitutional right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Flanagan, 679 F.2d 1072, 1075 (3d Cir. 1982), rev'd on other grounds, 465 U.S. 259 (1984); United States v. Dolan, 570 F.2d 1177, 1180 (3d Cir. 1978). Effective assistance of counsel means representation by an attorney with undivided loyalty and free from any conflicts of interest. Strickland v. Washington, supra.

While a defendant has an absolute right to counsel, he has no right to a particular counsel. United States v. Flanagan, 679 F.2d 1072, 1075 (3d Cir. 1982); United States v. Provenzano, 620 F.2d 985, 1004-1005 (3d Cir. 1980). "[T]he right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, [but] the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v.

United States, 486 U.S. 153, 160 (1988). A criminal defendant is entitled to representation free from conflicts of interest. United States v. Gambino, 864 F.2d 1064, 1069 (3d Cir. 1988). Although a criminal defendant can waive his sixth amendment rights in some circumstances, that right to waiver is not absolute, since "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. See United States v. Provenzano, 620 F.2d 985, 1004-1005; United States v. Dolan, 570 F.2d 1177, 1184 (3d Cir. 1978).

In Dolan, the Third Circuit expressed concerns about breaches of professional ethics and respect for the integrity of the court when there is a conflict of interest. The Court stated:

> [W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver. Under such circumstances, the court can elect to exercise its supervisory authority over members of the bar to enforce the ethical standard requiring an attorney to decline multiple representation.

Id. at 1184 (as quoted with approval in Wheat, 486 U.S. at 162, emphasis added and footnote omitted).

There are two independent interests at stake in addition to the defendant's right to effective assistance of counsel. On the one hand, the Court has the power and the duty to enforce professional standards. United States v. Stout, 723 F. Supp. 297, 306-07 (E.D. Pa. 1989). Those standards include the duty of loyalty to a client or a former client, the duty to vigorously represent a client, and the duty to keep client confidences. Id.[1] The Court has the additional obligation to consider the integrity of the trial process, both by ensuring that the trial has the appearance of fairness and by aiming to keep any jury verdict free from future attack because of a later conflict claim. United States v. Dolan, supra.

While a defendant is entitled to a presumption in favor of the counsel of his choice, "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Wheat v. United States, 486 U.S. at 164. The Wheat case involved a defendant (Wheat), who sought to have a particular attorney, Eugene Iredale, represent him in spite of the fact that the attorney had also represented other individuals charged in different cases for related drug transactions. One of these other defendants, Javier Bravo, might have been a government witness in Wheat's case. Indeed, the Government's principal basis for disqualification was that, if Bravo testified at Wheat's trial, "ethical proscriptions would forbid [Iredale] from cross-examining Bravo in any meaningful way," thus creating a "serious conflict of interest." Id. at 156. The district court disqualified Iredale. The

---

[1] In Stout, Judge Ditter stated: "An attorney's duty of loyalty and confidentiality to his clients continues even after the termination of the attorney-client relationship. It does not end until the former client releases the attorney from that duty or waives any interest in the continued protection of privileged communications." Id. at 309.

court of appeals affirmed, holding that the district court acted within its discretion. The Supreme Court agreed.

The Court began its analysis by recognizing that "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." Id. at 159. The Court held that a defendant's ability to choose a particular attorney is limited by "an independent interest in ensuring that criminal trials are conducted within the ethical standard of the profession and that legal proceedings appear fair to all that observe them." Id. at 160. Moreover, the Court noted that the "need [of district courts] to investigate potential conflicts arises in part from the legitimate wish of District Courts that their judgments remain intact on appeal." Id. at 161.

The Court relied on these factors to hold that a district court has the discretion to disqualify a particular attorney "where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 162-63. The Court specifically concluded that the trial court acted within its discretion in disqualifying Iredale, noting the possibility of the need for Iredale to cross-examine Bravo at Wheat's trial, which would have violated Iredale's ethical obligations. In sum, the Court stated that the trial court "must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a "serious potential for conflict." Id. at 163.

What the courts have recognized is that trial courts must preserve broad discretion to override a defendant's waiver of conflict-free representation when the interests of justice so demand. That includes cases in which the courts must act to protect the integrity of the trial process, the ethical standards of the legal profession, or even, in egregious cases, fairness to the

defendant. In other words, where there is a substantial risk of a serious conflict of interest, the district court retains the discretion to insist on independent representation notwithstanding a "knowing and intelligent" waiver by the defendants.

**B. Application of the Legal Standard to this Case**

In this case, there can be no doubt that, during the course of his representation of the cooperating witness, Mr. Santaguida received confidential communications from that individual and that he owes him a continuing duty of loyalty. This conflict of loyalty is untenable and can only be resolved by disqualification. United States v. Moscony, 927 F.2d at 751.

In Moscony, the Third Circuit upheld the district court's disqualification of defense counsel under similar facts. The district court's ruling in Moscony was predicated upon Moscony's counsel's prior representation of three important government witnesses. In that case, defendants Moscony and Cullen and various employees were all represented by one law firm during the grand jury investigation. 927 F.2d at 747. After the grand jury indicted Moscony and Cullen,[2] the Government realized the employees were expected to be called as witnesses in the trial of Moscony. Id. The Government then moved to have the law firm disqualified because it had represented the employees during the grand jury investigation and the employees had made confidential statements to the law firm. Id.

After a hearing on the issue of disqualification, the court concluded that the employees' testimony would be central to the Government's case, and that "vigorous cross-examination of these witnesses would be necessary." Id. at 747-48. The trial court disqualified

[2]Cullen subsequently pleaded guilty. Moscony, 927 F.2d at 745.

the law firm because to forego cross-examination would deprive Moscony of his Sixth Amendment rights and to pursue cross-examination would have violated ethical standards of privileged communications. Id. at 748. On appeal, the Third Circuit affirmed and observed: Conflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." Id. at 750 (citations omitted). This is so because effective cross-examination of government witnesses is essential to a vigorous defense, but precluded by ethical standards that proscribe the use of privileged communications. Id. at 748.

As the rules governing attorney conduct in the Eastern District of Pennsylvania make clear,[3] an attorney has a duty not to reveal information "relating" to representation of a client, and the duty continues after the attorney-client relationship terminates. See 204 Pa. Code § 81.4 (Rules 1.6(a); 1.6(d)).[4] Pennsylvania Rule of Professional Conduct 1.6(a) states, in pertinent part: "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation." Pennsylvania Rule of Professional Conduct 1.6(d) states: "The duty not to reveal information relating to representation of a client continues after the client-lawyer relationship has terminated."[5]

---

[3]See Local R. Civ. P. 14 (providing that Pennsylvania's Rules of Professional Conduct apply in the Eastern District of Pennsylvania); Local R. Crim. P. 2 (making Rule 14 applicable to criminal proceedings).

[4]As lawyers, and especially as prosecutors, the Government is obligated to call actual and potential ethical improprieties to the attention of the Court. A.B.A. Model Code of Professional Responsibility, Ethical Consideration (EC) 7-13; Disciplinary Rule (DR) 1-103(A).

[5] Under Pennsylvania Rule of Professional Conduct 1.7(b):

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to

There is a presumption that an attorney receives confidential communications in the course of his representation of a client. United States v. Provenzano, 620 F.2d at 1004-05. "In litigation, an attorney may not abandon his client and take an adverse position in the same case. This is not merely a matter of revealing or using the client's confidences and secrets, but of a duty of continuing loyalty to the client." In re Corn Derivatives Antitrust Litig, 748 F.2d 157, 161 (3d Cir. 1984). Furthermore, the Rules of Professional Conduct forbid a lawyer who has formerly represented a client from "representing another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client" without the former client's consent. 204 Pa. Code § 81.4 (Rule 1.9(a)).

In United States v. Montevecchio, 645 F. Supp. 497 (W.D. Pa. 1986), aff'd, 829 F.2d 33 (3d Cir. 1987), the district court disqualified defense counsel who had represented important Government witnesses in prior unrelated matters. As noted by the court,

> Here defendant's counsel represented critical government witnesses in prior and apparently unrelated matters...
>
> The credibility of these witnesses will be under attack and we are informed that the government relies heavily on their testimony. Those witnesses have served warning that they will claim the attorney client privilege with respect to questions posed to them by defense counsel on the witness stand. In such a situation the

---

another client or to a third person, or by the lawyer's own interest, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

> interests of justice could be frustrated on both sides; the public interest in a fair trial, and the defendant's interest if defense counsel is unable to cross examine two of the government's critical witnesses.
>
> If this does not constitute an actual conflict of interest, it certainly reveals the potential for conflict...
>
> We conclude therefore that the appearance of conflict and the potential for conflict are sufficient to require the removal of counsel and we will so order.

Id. at 500-01.

Mr. Santaguida has stated that he plans on withdrawing as counsel for Jaquel Crews. However, there is no reason, given the conflict, that Mr. Santaguida should still be representing Jaquel Crews more than one week after acknowledging the existing conflict.

WHEREFORE, the Government respectfully requests that, if attorney Joseph Santaguida does not immediately withdraw from the representation of Jaquel Crews, a hearing be convened and colloquies performed as to defendant Jaquel Crews and the cooperating witness, and that the Court disqualify Joseph Santaguida from representing defendant Jaquel Crews.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

Thomas R. Perricone
Assistant United States Attorney
Chief, Narcotics

K.T. Newton
Assistant United States Attorney

Dated: November 22, 2010

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, this pleading was filed via ECF, and thus served upon the following:

Joseph C. Santaguida, Esquire
North American Building, 2d Floor
121 South Broad Street
Philadelphia, Pennsylvania 19107

K.T. Newton
Assistant United States Attorney

Dated: November 22, 2010