IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

          v.          :          Criminal No. 10-CR-663-JP-04

JAQUEL CREWS          :

## O R D E R

AND NOW, this _____ day of _____, 2017, upon

consideration of the defendant's Motion for Partial Relief from Sentence in the

Nature of a Writ of Error *Coram Nobis or Audita Querela*, under 28 U.S.C.

§ 1651, and the government's response in opposition to the motion, for the reasons

set forth in the government's response, it is hereby ORDERED that the motion is

DENIED.


                                        _____

                                        **HONORABLE JOHN R. PADOVA**
                                        **United States District Judge**

### IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :

     v.               :    **Criminal No. 10-CR-663-JP-4**

JAQUEL CREWS          :

### RESPONSE OF UNITED STATES OF AMERICA
### IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL RELIEF
### FROM SENTENCE

The United States of America, by its attorneys, Louis D. Lappen,

United States Attorney for the Eastern District of Pennsylvania, and James R.

Pavlock, Assistant United States Attorney, responds in the above-captioned matter

to the defendant's Motion for Partial Relief from Sentence in the Nature of a Writ

of Error Coram Nobis or Audita Querela (ECF 581), under 28 U.S.C. § 1651 (All

Writs Act), as follows:

## I.    INTRODUCTION

As a result of his conviction in this case on drug trafficking

conspiracy charges, on August 14, 2012, this Court entered against the defendant,

Jaquel Crews, and in favor of the United States, an Order and Forfeiture Money

Judgment and Memorandum (ECF 361, 362). This judgment represents the

amount of property that  was "used or intended to be used to commit, or to

facilitate the commission of the conspiracy to distributed controlled substances (cocaine and cocaine base), in violation of 21 U.S.C. Section 846, and any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of this offense."

In addition, the Court determined that the sum of $5 million is subject to forfeiture as a result of the defendant's conviction on Count Five of the Second Superseding Indictment, representing the amount of property which was used to commit, or to facilitate the commission of the conspiracy to distribute controlled substances…and was property constituting, or derived from, proceeds obtained directly or indirectly from the commission of this offense. A personal forfeiture money judgment in the amount of $5 million was entered against Crews in favor of the United States, for which Crews was ordered to be jointly and severally liable with his co-defendant, Mark Miller. To date, the judgment remains fully unpaid.

In the present motion (ECF 581), Crews seeks to vacate completely the forfeiture judgment under the authority of The All Writs Act, 28 U.S.C. § 1651, and the common law Writ of Error *Coram Nobis* or *Audita Querela*, based on the Supreme Court's recent decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

As explained below, this Court should deny the motion because it lacks jurisdiction to alter a final forfeiture judgment and, in the alternative, because Crews' challenge is without merit.

## II.    STATEMENT OF FACTS

### A.    Procedural Background

On November 3, 2010, defendant Jaquel Crews and co-defendant Mark Miller were indicted in a Second Superseding Indictment on multiple charges, including but not limited to, participating in a conspiracy to distribute hundreds of kilograms of cocaine and hundreds of grams of cocaine base ("crack") from 1986 through November 2007, in violation of 21 U.S.C. § 846, as charged in Count Five of that Second Superseding Indictment.

On March 14, 2012, at the conclusion of a two-week trial, a jury found both defendants guilty of, among other charges, the criminal violation alleged in Count Five of the Second Superseding Indictment.   The defendant was sentenced on November 5, 2013 to a term of imprisonment of 240 months.

On May 2, 2012, the Government filed its Motions for Forfeiture Money Judgments in the amount of $5,000,000 against defendant Crews and co-defendant Miller.   On August 14, 2012, the Court entered its Order and Forfeiture Money Judgment in the amount of $5 million against Crews (and Miller) and entered a detailed Memorandum outlining the forfeiture case against Crews and Miller.   ECF 361, 362, *United States v. Crews,* 885 F.Supp. 2d 791 (E.D. Pa. 2012).   The Court also rejected

defendant's contention that joint and several liability on the money judgment was not authorized under prevailing law. *Crews*, 885 F. Supp. 2d at 802.

On September 9, 2015, defendant's conviction was affirmed by the Third Circuit. *United States v. Mark Miller and Jaquel Crews*, 645 Fed. Appx. 211 (3d Cir. 2016). The Court of Appeals also rejected defendant's contention that imposition of joint and several liability was unauthorized, and found no error in the trial court's order of forfeiture.

## III.   ARGUMENT

### A.   The <u>Honeycutt</u> Decision

In *Honeycutt v. United States*, the Supreme Court held that, under the criminal forfeiture statute governing narcotics offenses, 21 U.S.C. § 853(a)(1), forfeiture could not be awarded against the defendant on a theory of joint and several liability for proceeds that the defendant did not obtain. Specifically, the Court reversed a Sixth Circuit decision that had held that the government was entitled to a forfeiture money judgment against a defendant who had worked in a store owned by his brother and culpably participated in sales of a chemical used to manufacture methamphetamine, but who did not personally receive any of the proceeds of the sales. The Court held that, under Section 853(a)(1), forfeiture "is limited to property the defendant himself actually acquired as the result of the crime." *Id*. at 1635. *See also United States v. Brown*, 694 Fed. App'x 57, 58 (3d

- 4 -

Cir. 2017); *United States v. Gjeli*, 867 F.3d 418 (3d Cir. 2017), as amended (Aug.

23, 2017) (following *Honeycutt* and noting that "forfeiture  .  .  .  is limited to

property each defendant himself actually acquired as the result of the crime").

In reaching this conclusion, the Court highlighted Section 853(a)'s

textual requirement that a defendant "obtain" the proceeds – which, the Court

announced, evidenced the statute's focus on personal possession or use.  137 S. Ct.

at 1632.  Thus, the Court concluded that 21 U.S.C. § 853(a)(1) authorizes

forfeiture of only the property the defendant himself obtained as the result of the

crime.  It does not authorize entry of a forfeiture money judgment for proceeds that

the defendant never obtained, even if that property passed through the hands of a

co-conspirator.

In highlighting the concept of "joint and several liability" and its

application to multiple co-conspirators, the Supreme Court described an example

of a "farmer mastermind" whose scheme was to grow, harvest and distribute

marijuana on local college campuses.   The mastermind recruited a college student

to make deliveries and paid the student $300 each month from the proceeds.  In

one year, the mastermind earned $3 million, and the student earned $3600.  Under

joint and several liability, the student would be equally liable for a judgment based

on the entire amount of the conspiracy's proceeds, $3 million, even though he

never personally acquired any proceeds beyond the $3600. The Court held that this was not permissible under Section 853(a)(1).

**B.    Crews' motion must fail, because this Court lacks jurisdiction to alter a final forfeiture judgment.**

The government notes initially that, by construing 21 U.S.C. § 853(a) to limit criminal forfeiture to the tainted proceeds "obtained, directly or indirectly" by the individual defendant, the Supreme Court in *Honeycutt* announced a substantive rule that has retroactive effect. *See Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) ("[n]ew substantive rules generally apply retroactively" on collateral review), quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004); *Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016) (Eighth Amendment decision barring mandatory life without parole for juvenile offenders is substantive and therefore retroactive on collateral review); *Bousley v. United States*, 523 U.S. 614, 620 (1998) (new decision construing substantive reach of criminal statute applies on collateral review). *See also In re Hoffner*, 870 F.3d 301 (3d Cir. 2017) (following *Welch*). The Court in *Honeycutt* clarified that Section 853(a) always restricted criminal forfeiture to the property obtained, directly or indirectly, by the individual defendant. *See Bousley*, 523 U.S. at 625 (decision "merely explained what [the statute] had meant ever since the statute was enacted.") (Stevens, J., concurring in part and dissenting in part).

- 6 -

However, just because a new rule has retroactive effect does not automatically confer a remedy.  Although a defendant may raise *Honeycutt* on direct appeal, *see Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), or even on appeal from an order forfeiting substitute assets, a defendant may not challenge a criminal forfeiture order once the judgment becomes final.

A district court lacks authority to alter the terms of a criminal forfeiture order after the direct appeal has become final.  *See United States v. Pelullo*, 178 F.3d 196, 202 (3d Cir. 1999) (preliminary order is final as to the defendant and divests him of any interest he had in the property, including property forfeited as a substitute asset); *United States v. Lester*, 2008 WL 732897, *2 (D. Kan. 2008) (once order of forfeiture became final as to defendant at sentencing, his only remedy was direct appeal; he could no longer make objections to the forfeiture in the district court); *United States v. Hicks*, 2005 WL 2656594, *2 (W.D. Wash. 2005) (because forfeiture is part of sentencing, it may only be challenged on direct appeal; once the time for appeal has expired, the forfeiture is final and cannot be revised by the district court).  Therefore, while the decision in *Honeycutt* may be applied retroactively, there is no basis to vacate a forfeiture judgment once it becomes final.[1]

---

[1] Generally, an order is deemed "final" when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or

Once a conviction is final, the court's jurisdiction to alter a judgment

of conviction after sentencing is "extremely limited." *Young v. United States*, 489

F.3d 313, 316 (7th Cir. 2007). *See also United States v. Durham*, 2008 WL

718170, *1 (S.D. Ill. 2008). In addition to a direct appeal, defendants can seek

collateral review of their sentence only on claims of constitutional or other

profound error pursuant to 28 U.S.C. §§ 2255, 2241.[2] Defendants may seek to

---

a petition for certiorari finally denied." *Griffith v. Kentucky*, 479 U.S. at 321, n.6. *See also Clay v. United States*, 537 U.S. 522, 524-25 (2003) (where no petition for a writ of certiorari is filed, conviction becomes final upon expiration of the 90-day period for filing a petition). A criminal judgment becomes "final" only after the Supreme Court affirms the conviction and sentence on the merits, or denies a timely filed petition for certiorari. *See Kapral v. United States*, 166 F.3d 565, 570 (3d Cir. 1999). If the defendant does not file a certiorari petition, the judgment of conviction then becomes "final" after the time for seeking certiorari review expires. *Id. See also United States v. Robinson*, 556 Fed. App'x 68, 69 (3d Cir. 2014). Crew's appeals are final.

[2] Crews recently filed for collateral review of his conviction under 28 U.S.C. § 2255. However, it is well settled that a defendant cannot challenge a criminal forfeiture on collateral review under 28 U.S.C. §§ 2255 or 2241 on any ground that could have been raised on direct appeal. *Elliott v. United States*, 2017 WL 2937603 (E.D. N.C. July 7, 2017) (post-conviction challenge to forfeiture judgment must be raised on direct appeal, not in a § 2255 motion); *Cannady v. United States*, 2017 WL 2167890 (E.D. N.C. May 15, 2017) (petitioner's attempt to challenge decades-old forfeiture through a section 2255 petition failed because his only remedy to challenge criminal forfeiture must be made on direct appeal or the challenge is waived). These statutes are limited in coverage and scope to claims that challenge the legality of the defendant's "custody" and seek "the right to be released" from custody. *See* 28 U.S.C. § 2255(a) (permitting motions to vacate by "[a] prisoner in custody under sentence of a court . . . claiming the right to be released"); 28 U.S.C. § 2241(c)(1) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody under or by color of the authority of the United States"). *See also United States v. Finze*, 428 Fed. App'x 672, 677 (9th Cir. 2011) (§ 2255 may not be used to challenge a criminal forfeiture order because it applies only to the custodial part of a criminal sentence); *United States v. Smith*, 2017 WL 2766099 (E.D. Ky. June 26, 2017) (claims based on monetary penalties, such as forfeiture, do not satisfy the in-custody requirement of § 2255, leading to denial of petition); *Steele v. United States*, 2017 WL 2719363 (D. Md. June 22, 2017) (same); *Olivos v. United States*, 2017 WL 2292973 (M.D. Fla. May 23, 2017) (a challenge to restitution or forfeiture is not cognizable under section 2255, because a successful challenge would not lead to relief from custody, which is a

correct or modify their sentence where applicable under Federal Rules of Criminal

Procedure 35 or 36, or where elsewhere authorized by statute. *See, e.g.*, 18 U.S.C.

§ 3582(c); 18 U.S.C. §§ 3664(o), 3572(c) (authorizing court to correct a sentence

of restitution or criminal fine under limited circumstances). Here, Crews has not

sought to alter the forfeiture judgment under any of these statutory provisions, and

any remedy under these statutes is limited. *Cf. Henry v. United States*, 913

F. Supp. 334, 335 (M.D. Pa. 1996) (failure to object at time of trial and raise issue

on direct appeal bars relitigating issue on collateral review in absence of showing

of cause and actual prejudice).

Thus, it is clear that if property is forfeited criminally, the forfeiture is

part of the defendant's sentence and may be challenged only on direct appeal.

*See United States v. Parenteau*, 647 Fed. App'x 593, 596 (6th Cir.

2016) ("court's forfeiture order becomes final as to the defendant at sentencing.

*See also* Fed. R. Crim. P. 32.2(b)(4)(A) ("The time for the defendant . . . to file

an appeal from the forfeiture order, or from the court's failure to enter an order,

begins when judgment is entered."); *Elliott v. United States*, 2016 WL 1408090

(E.D. N.C. 2016) (court denied motion for return of property; defendant previously

---

requirement for federal habeas jurisdiction); *United States v. Teves*, 2016 WL 7362866 (D. Haw. Dec. 19, 2016) (same). The custodial limitation embedded in the text of the federal post-conviction statutes makes plain that convicted defendants have no right to use those statutes to challenge non-custodial components of their sentences, including forfeiture orders. *United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015) ("monetary component of a sentence does not satisfy the 'in custody' requirement of federal habeas statutes").

filed a direct appeal and failed to challenge the forfeiture in that appeal). A

defendant may challenge a forfeiture only by appealing that order. *United States v.*

*Noyes*, 557 Fed. App'x 125, 127 (3d Cir. 2014) (motion challenging forfeiture

order, cloaked as a Rule 41(g) motion, was untimely because challenge was not

raised on direct appeal); *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007)

("[A] criminal forfeiture is part of the defendant's sentence and must be challenged

on direct appeal or not at all."). Crews filed appeals, and raised the issue of joint

and several liability on appeal. His appeals were denied. Crews had a full and fair

opportunity to litigate this issue. This Court's forfeiture judgment is final, and

Crews, therefore, lacks the ability to alter that judgment.

C.    **Defendant's Sought-After Relief is Not Available under The All
      Writs Act or a Petition for Writ of Audita Querela or Coram
      Nobis**.

Crews seeks to vacate this Court's forfeiture judgment pursuant to

The All Writs Act and Writ of *Coram Nobis* or *Audita Querela,* based on the

Supreme Court's recent decision in *Honeycutt*. As explained below, the writs are

unavailable here and this Court should reject this claim.

The All Writs Act, 28 U.S.C. § 1651(a), allows "all courts established

by Act of Congress [to] issue all writs necessary or appropriate in aid of their

respective jurisdictions and agreeable to the usages and principles of law."

However, the courts do not have unfettered discretion to issue writs under this act:

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue *ad hoc* writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

*Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34, 43 (1985). *See also Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009). Jurisdiction to issue a Writ of *Audita Querela* lies under the All Writs Act. *See United States v. Kenney*, 2017 WL 621238, \*3 (M.D. Pa. Feb. 15, 2017); *United States v. Flowers*, 2016 WL 80666, \*1 (W.D. Mich. 2016). *See also United States v. Morgan*, 346 U.S. 502, 506 (1954) (writ of *coram nobis*).

Under the common law Writ of *Audita Querela*, a defendant may obtain relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment. *United States v. Bullock*, 666 Fed. App'x 117, 118 (3d Cir. 2016), citing *Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009); *United States v. Torres*, 282 F.3d 1241, 1245, n.6 (10th Cir. 2002). While the Writ has been abolished in civil cases, courts have held that the writ may apply in limited circumstances "in criminal cases to the extent that it fills in gaps in the current system of post-conviction relief." *Massey*, 581 F.3d at 174; *United States v. Banks*, 694 Fed. Appx. 61 (Mem) (3d Cir. 2017), citing *United States v. Valdez-Pacheco*, 237 F.3d 1077, 1079 (9th Cir. 2001). *See also United*

- 11 -

*States v. Miller*, 599 F.3d 484, 488 (5th Cir. 2010) (noting, with some reservation,

that the writ of *audita querela* "*might* also survive in criminal adjudications, if

there is a gap for it to fill") (emphasis in original); *United States v. Chandler*, 183

F. Supp. 3d 1158, 1162 (N.D. Ala. 2016) (explaining history of *audita querela*;

court also noted that "courts of appeals have expressed varying levels of

skepticism about whether *audita querela* is available at all in criminal

proceedings"); *United States v. Fischer*, 2014 WL 5473586, *3 (D. Ore. 2014) (if

*audita querela* has survived, courts agree that its use is limited to very narrow

circumstances).[3]

      The authority of federal courts to recognize common law post-

conviction remedies pursuant to The All Writs Act is governed by the Supreme

Court's decision in *United States v. Morgan*, 346 U.S. 502 (1954); *United States v.*

*Holt*, 417 F.3d 1172 (11th Cir. 2005); *United States v. Ayala*, 894 F. 2d 425, 428

(D.C. Cir. 1990). For example, in *Morgan*, the Court held that a federal prisoner

may collaterally attack his conviction, even when he is no longer in custody, using

---

[3] Those gaps, however, appear to be exceedingly rare. For example, there is no reported decision from the Third Circuit in which it found a gap in the federal post-conviction framework that needed to be filled with a Writ of *Audita Querela*. Indeed, to date, no federal court of appeals has ever published an opinion that found a gap where such a writ would lie. *See Chandler*, 183 F. Supp. 3d at 1162.

the common law writ of *coram nobis*. *Id*. at 510-11.[4]  "The teaching of *Morgan* is

that federal courts may properly fill the interstices of the federal post-conviction

---

[4]  Crews is in custody, serving his 240 month sentence imposed by the Court in 2013. Accordingly, *coram nobis* is unavailable to him.  Courts have consistently held that a defendant serving a period of supervised release is "in custody" and cannot present a petition for writ of error *coram nobis*.  The Third Circuit has followed this rule in several unpublished decisions. *Ajao v. United States*, 2007 WL 4219466, *1 (3d Cir. 2007); *United States v. Dent*, 135 Fed. Appx. 532 (3d Cir. 2005) (per curiam). *See also United States v. Baird*, 2008 WL 4144934, *1 (3d Cir. 2008).  Other courts that have addressed the question have likewise held. *See, e.g.*, *United States v. Sandles*, 469 F.3d 508, 517 (6th Cir. 2006); *Matus Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002); *United States v. Brown*, 117 F.3d 471, 475 (11th Cir. 1997).  Therefore, the availability of *coram nobis* relief essentially mirrors the availability of habeas relief.  A defendant may seek habeas relief (under § 2255 for federal inmates) if he is "in custody," and the Third Circuit held that supervised release suffices for that.  *United States v. Essig*, 10 F.3d 968, 970 n.3 (3d Cir. 1993). *See also Jones v. Cunningham*, 371 U.S. at 242-43 (holding that the custody requirement for state habeas petition in federal court is met even though the prisoner was on parole).  As such, a defendant on supervised release has an available habeas remedy; however, it follows that a petition for *coram nobis* would not be permitted until that custody ends.

Moreover, although the writ has been used in the past to challenge a restitution order based on inaccurate information, see *United States v. Mischer*, 787 F. 2d 240 (7th Cir. 1986), the Supreme Court has since clarified that the writ may not be used to circumvent time limits set forth in the criminal rules.  *Carlisle v. United States*, 517 U.S. 416, 427 (1996) (the writ of error coram nobis "was traditionally available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before verdict.").  Because Rule 35 limits a district court's authority to correct a sentence within a specific time frame, it is that rule, "and not the All Writs Act,' that is controlling." *Ibid.* (internal quotation marks omitted).   "A writ of error *coram nobis* is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a result of his conviction, and the challenged error is of significant magnitude to justify the extraordinary relief." *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004), quoting *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996). *See also United States v. Baptiste*, 223 F.3d 188, 189 (3d Cir. 2000) (*coram nobis* has traditionally been used to attack convictions with continuing consequences when the petitioner is no longer "in custody" for purposes of 28 U.S.C. § 2255; *coram nobis* is an extraordinary remedy and a court's jurisdiction to grant relief is of limited scope).  "Only where there are errors of fact 'of the most fundamental kind, that is, such as to render the proceeding itself irregular and invalid,' can redress be had." *United States v. Cariola*, 323 F.2d 180, 184 (3d Cir. 1963), quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914).

remedial framework through remedies available at common law." *Holt*, 417 F.3d

at 1175, citing *Ayala*, 894 F. 2d at 428.

However, common law writs such as *audita querela* and *coram nobis*

"are extraordinary remedies that are appropriate only in compelling

circumstances." *United States v. Thody*, 460 Fed. App'x 776, 778 (10th Cir.

2012), citing *United States v. Denedo*, 556 U.S. 904, 917 (2009).

*See also United States v. Quintieri*, 547 Fed. App'x 32, 33 (2d Cir. 2013)

(Amended Dec. 2, 2013) ("Writ of *Audita Querela* is an extraordinary remedy and

is generally available only if the absence of any avenue of collateral attack would

raise serious constitutional questions about the laws limiting those avenues")

(citation omitted).

Further, the Seventh Circuit in *United States v. Johnson*, 962 F. 2d

579, 582 (7th Cir. 1992), specifically noted:

> *Audita querela* is not a wand which may be waved over an otherwise
> valid criminal conviction, causing its disappearance; rather, it
> provides relief from the consequences of a conviction when a defense
> or discharge arises subsequent to entry of the final judgment. The

---

The Third Circuit, in *United States v. Okorie*, 697 Fed. Appx. 116 (Mem) (3d Cir. 2017), noted in a recent opinion that *coram nobis* "may be used to attack allegedly invalid convictions which have continuing consequence, when the petitioner has served his sentence and is no longer in custody for purposes of 28 U.S.C. Section 2255." *Okorie*, 697 Fed. Appx. at 117, quoting *United States v. Mendoza*, 690 F.3d at 159 (internal quotation marks omitted). The Third Circuit noted that the U.S. Supreme Court has remarked that "it is difficult to conceive of a situation in a federal criminal case today where a writ of *coram nobis* would be necessary or appropriate," id. (quoting *Carlisle*, 517 U.S. 416, 429).

> defense or discharge must be a legal defect in the conviction, or in the sentence which taints the conviction.

Thus, the court's authority to issue such writs is limited in scope and it is recognized that "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 511. "[T]he petitioner must show that something like an intervening change in law . . . rather than simply argue that the collateral consequences of the conviction have turned out to be unduly harsh." *Rawlins v. Kansas*, 714 F.3d 1189, 1193 (10th Cir. 2013). However, while the intervening change in law "has to have rendered an originally correct judgment infirm . . . it must do more than simply tip the scales of equity." *United States v. Spring*, 2015 WL 1432637, *3 (D. Utah 2015), citing *United States v. Ayala*, 894 F. 2d at 429.

As noted above, the Writ of *Audita Querela* is an extraordinary remedy. It is justified only where there: (1) has been an intervening change of law that renders a conviction unjust and (2) is no other avenue of relief available to fill the void created by an intervening change of law. Because the writ is such an "extraordinary remedy," it should be issued only in compelling circumstances where "serious constitutional questions" exist about the laws limiting avenues for collateral relief.

Here, while arguably *Honeycutt* presents an intervening change in the law regarding the imposition of forfeiture judgments, Crews cannot meet the first prong of this test and show that *Honeycutt* rendered his conviction unjust. Moreover, he certainly cannot justify asking the Court to vacate the entire forfeiture judgment in totality.

Crews had the opportunity to contest the money judgment at sentencing and challenged it.  This Court and the Third Circuit, after consideration of Crews' arguments and the record, denied his objection.  The gravamen of Crews' current motion is that *Honeycutt*, which was decided after Crews' conviction for conspiracy to distribute controlled substances and after the forfeiture judgment became final, completely invalidated the forfeiture judgment.   In particular, Crews, with little analysis as to the proper application of these writs or of *Honeycutt* itself, requests that the Court void the forfeiture judgment in its entirety, effectively arguing that the Court's entry of a $5 million forfeiture judgment against him is unjust.  Nothing in the trial record or under *Honeycutt* supports this conclusion.

### D.     The Court's previous findings on Crews' involvement in the conspiracy demonstrate that Crews himself obtained $5 million in proceeds

Indeed, the full forfeiture judgment of $5 million is commensurate with Crews' extensive involvement in the multi-year drug trafficking conspiracy as

the organizer and leader of the conspiracy. Like the "farmer mastermind" cited by the Supreme Court in the *Honeycutt* example, Crews' role in the drug trafficking conspiracy spanned all facets of the enterprise. This Court, and the Court of Appeals, recognized this extensive leadership role for purposes of the U.S. Sentencing Guidelines calculation. For this reason, the forfeiture judgment assessed against Crews cannot be found to be unjust.

In its memorandum opinion, the Court discussed extensively the trial testimony, which firmly established Crews' role as a leader in the decade-long drug trafficking conspiracy. The Court also noted the millions of dollars Crews spent in drug trafficking proceeds to buy hundreds of kilograms of cocaine for future sales. *Crews*, 885 F. Supp. 2d at 794-801. The Court recounted the testimony of cooperating co-defendant Emmanuel Moore, who testified that Crews and Miller paid millions of dollars to him over a number of years to secure cocaine for the Philadelphia-based drug trafficking operation. From the fall of 2002 until early 2003, Crews himself purchased at least 25 kilograms of cocaine from Moore at $24,000/kilogram for a total of $600,000. *Crews*, 885 F. Supp. 2d at 794. Crews paid Moore $18,000-$19,000 per kilogram for cocaine that Moore purchased from a California-based supplier, Timothy Carter, and Moore regularly flew to California with money in his luggage that had been given to him by Crews, Miller and others, which Moore gave to Carter. *Crews*, 885 F. Supp. 2d at 794-

- 17 -

795. From May 2003 until he was stopped at the Philadelphia airport in October,

2004, Moore traveled to California with money to purchase cocaine twice a week,

and some of these flights were paid for by Crews. Moore initially purchased one

to two kilograms of cocaine per week from Carter, but his business grew to at least

20 kilograms per week. On average, Moore purchased at least five kilograms of

cocaine a week from Carter using money provided to him by Crews, who either

personally gave the money to Moore, or, if he was busy, sent the money with

Miller. *Crews*, 885 F. Supp. 2d at 795.   In sum, based on Moore's testimony, for

the 18 months from May 2003 through October 2004, Crews and Miller purchased

an average of 20 kilograms of cocaine per month from Moore that Moore obtained

from Carter, at a price of $18,000 per kilogram, for a staggering sum total of

$6,480,000. *Crews*, 885 F. Supp. 2d at 795.

The Court recounted testimony of how Crews turned to dealing

directly with Carter, finding that from June 2004 to October 2004, Crews and

Moore paid a total of $1,800,000 to Carter, purchasing an average of 20 kilograms

of Carter's cocaine per month at $18,000 per kilogram for five months. *Crews*,

884 F. Supp. 2d at 796.

Craig Lofton also testified at trial, and the Court found that in addition

to Lofton's purchasing some cocaine from Crews from 2002 through 2003, Lofton

sold Crews two to three kilograms of cocaine per week that he obtained from

another individual, Ernest Doe, for $20,000 or $22,000 per kilogram.   In addition,

Lofton obtained approximately 50 kilograms of cocaine per month from Mark

Walker and sold half of that amount, 25 kilograms of cocaine per month, to Crews,

who paid him $20,000 per kilogram.   In turn, Crews furnished 2-3 kilograms of

cocaine per month to Miller from the cocaine Crews got from Lofton. *Crews*, 885

F. Supp. 2d at 796.   Lofton also flew to California to obtain cocaine from Carter

from 2004 through 2006, and Lofton obtained the money for the cocaine from

Crews and Vince Crews, Miller and a female.    *Crews*, 885 F. Supp. 2d at 796.

Lofton also testified that he obtained more than $100,000 from Crews at Crews'

Sicklerville home for the purchase of cocaine on one occasion in February 2006.

*Crews*, 885 F. Supp. 2d at 797.

        The Court made further findings about Crews' efforts in facilitating

the extensive travel necessary to secure cocaine.   According to IRS Special Agent

Michael Pohar, Crews paid for airline tickets for himself, Moore and others to fly

to Los Angeles. *Crews*, 885 F. Supp. 2d at 797-798.   The Court also noted the

testimony of several other individuals who bought quantities of cocaine from

Crews and sold him cocaine.   In total, the Court found that Crews and Miller

purchased at least 261 kilograms of cocaine in furtherance of the drug trafficking

conspiracy, for a total purchase price of $5,120,000. *Crews*, 885 F. Supp. 2d at

- 19 -

799.   The Court found that Crews and Miller used over $5 million to commit the drug trafficking conspiracy.   *Crews*, 885 F. Supp. 2nd at 799.

The Court also noted that Crews (and Miller) had little reported legitimate income during the time they were purchasing cocaine through Emmanuel Moore, noting that Crews himself either reported no income in certain years or income from cooperating witness Deric Dandridge.  Dandridge, however, testified that he actually never employed Crews and that Crews had asked him in August 2003 to be put on Dandridge's payroll so that he would have the appearance of having legitimate income to report.  *Crews*, 885 F. Supp. 2d at 799-800.   The Court noted a number of trial exhibits (including tens of thousands of dollars for sporting event tickets, furs, jewelry, airfare and hotel charges, and other expenses) evidencing the lavish spending of both Crews and Miller during the same period in which they were both reporting little if any legitimate income. *Crews*, 885 F. Supp. 2d at 800.  The Court found that Crews did not earn any employment income from Dandridge or from credit consulting or credit repair. The Court found that there was no likely source of the cash used by Crews and Miller to purchase cocaine except for the proceeds of that drug trafficking conspiracy, and that the cash was itself, proceeds of the drug trafficking conspiracy and thus subject to forfeiture as proceeds under Title 21 U.S.C. Section 853(a)(1). *Crews*, 885 F. Supp. 2d 700.

The Third Circuit likewise found Crews' involvement in the drug trafficking conspiracy to be one of a leadership role, and upheld the trial court's assessment of a four-point enhancement to the Sentencing Guidelines. The Third Circuit found no error in the trial court's determination that Crews bore a leadership or organizational role in the offense, citing as an example, Crews' supervision of Danielle Fletcher in the production, packaging, storage and delivery of cocaine from her residence, Crews' direction of Craig Lofton and others to purchase large amounts of cocaine on buying trips to California, Crews' payment for flights from his own funds and that he answered to no one for these excursions. *Miller and Crews*, 645 Fed. Appx. at 224.

The validity of the forfeiture judgment, as well as Crews' conviction and participation as a leader of the conspiracy, was upheld on appeal. Under the circumstances here, there is no infirmity in the forfeiture judgment for a Writ of *Audita Querela* to rectify. This Court's forfeiture judgment was correct. Even if the Court finds that it has jurisdiction to vacate or alter the forfeiture judgment, the *Honeycutt* decision does not automatically confer a basis for additional post-conviction challenges and relief in this instance. Like the "farmer mastermind" in the *Honeycutt* example, Crews was a leader in the decade-long drug trafficking conspiracy, and was involved in all aspects of the operation. The government without question established at trial that Crews personally "obtained" over $5

million in drug proceeds and spent millions of those proceeds to secure hundreds

of kilograms of cocaine for future sales and to live a lavish lifestyle.[5]   Assessment

of a $5 million dollar forfeiture judgment against Crews is not unjust and is indeed

co-extensive with his involvement in the drug trafficking conspiracy.  The

government submits that *Honeycutt* does not create an error of the most

fundamental, constitutional character that it would impact the integrity of this

Court's judgment.

       For these reasons, this Court should deny the defendant's motion to

vacate the forfeiture.

### E.   The defendant's request for removal of lis pendens is moot

       A number of lis pendens were filed by the government against various

properties owned by Crews that were identified in the Second Superseding

Indictment.   The defendant filed a Motion to Strike the Notice of Lis Pendens on

August 9, 2013 (Doc. No. 435), claiming that because the government had

obtained a Forfeiture Money Judgment, the real property was no longer directly

forfeitable and was only available as a potential substitute asset thus causing the

Notice of Lis Pendens to no longer be applicable.  Def. Motion to Strike, ¶ 6. The

Government's Response (Doc. No. 435) confirmed the government's intent to seek

---

[5] Indeed, there is nothing in the *Honeycutt* decision that undermines that long-standing common theory of joint possession of property.  At trial, the government proved that Crews "obtained" -- either solely or jointly with Miller -- over $5 million in drug proceeds as a result of the conspiracy.

forfeiture of the real property at the time as substitute assets in satisfaction of the Forfeiture Money Judgment. On September 19, 2013, the Court denied defendant's Motion to Strike the Notices Lis Pendens (Doc. No. 448).

Since that time, several lis pendens have been withdrawn by the government in light of a foreclosure action on a particular property and the request by mortgagee for the government to remove the lis pendens so that the property could be foreclosed.

Presently, the government has determined that only one other property, 4648 Edmunds Street, Philadelphia, PA, has sufficient equity meeting U.S. Marshal Service thresholds for the government to pursue forfeiture as a substitute asset. Accordingly, the government will withdraw all remaining lis pendens on Crews-owned properties except this one by December 15, 2017. In light of the filing of its Motion for Preliminary Order of Forfeiture for Substitute Asset for 4648 Edmunds Street, the lis pendens filed on this property is appropriate to put the public on notice of the government's intent to seek forfeiture of the property. The government submits that defendant in its Motion has not identified any reason for removal of the lis pendens, and the government further submits that there is no basis to do so as to Edmunds Street.

## IV.   CONCLUSION

For the reasons set forth above, the government requests that the

Court deny the defendant's motion.

Respectfully submitted,

LOUIS D. LAPPEN
United States Attorney

JAMES R. PAVLOCK
Assistant United States Attorney

Date: November  29, 2017

- 24 -

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a that a true and correct copy of the

RESPONSE OF UNITED STATES OF AMERICA IN OPPOSITION TO

MOTION FOR PARTIAL RELIEF UNDER 28 U.S.C. § 1651, THE ALL WRITS

ACT was filed electronically and is available for viewing and downloading from

the ECF system, and was served by email, as follows:

Peter Goldberger, Esq.

James R. Pavlock
Assistant United States Attorney

Date: November  29, 2017