**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **No. 2:10-CR-663-04** |
| v. | : | (Judge Padova) |
| | : | |
| JAQUEL CREWS, Defendant. | : | |

**DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE BASED ON EXTRAORDINARY AND COMPELLING REASONS**

The defendant, Jaquel Crews, by undersigned counsel, moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for a modification of the sentence imposed on November 5, 2013, on the basis of extraordinary and compelling reasons, that is, a serious, debilitating health condition (in particular, his recent stroke), along with intervening changes in sentencing law that suggest the sentence imposed today in the same case would approximate or be less than Mr. Crews' time served. In support of this motion, the defendant states:

1. Jaquel Crews was convicted by a jury in this Court on March 15, 2012, on a drug conspiracy charge, 21 U.S.C. § 846, which is Count 5 of the second superseding indictment, and on ten of 13 money laundering counts under 18 U.S.C. § 1956(a)(1) (Counts 8-20), involving purchases of real estate with what were alleged to be drug proceeds. Mr. Crews was charged with participating in a large-scale cocaine trafficking conspiracy, said to have existed continuously for over 20 years, from 1986 to 2007. He was not charged in any substantive counts of drug distribution.

2. On October 4, 2011, the government filed and served an Information pursuant to 21 U.S.C. § 851(a) charging that Mr. Crews had a prior drug conviction; on November

1, 2013, the government filed an amended version. Doc. 177, 457. Sentencing occurred on November 5, 2013. This Court imposed the mandatory minimum 20-year prison term, which the Court found to be applicable on the Count Five drug conspiracy, and concurrent 20-year prison terms on each of the money laundering counts. In addition, an aggregate supervised release term of 10 years was imposed, as well as a special assessment of $1,100, but no fine or restitution. This Court also granted the government's motion for a $5 million forfeiture money judgment. The Judgment was signed on November 6, 2013, and was filed and entered the following day. Doc. 466.[1]

3. On appeal, the Third Circuit affirmed. 645 Fed.Appx. 211 (April 1, 2016), *cert. denied*, 137 S.Ct. 409 (10/31/16). Mr. Crews subsequently petitioned *pro se* to vacate his conviction under 28 U.S.C. § 2255, which this Court denied in its entirety on September 4, 2018. Doc. 634–635.

2. Mr. Crews has been incarcerated in connection with this case continuously since his conviction on March 14, 2012, with credit for time in detention between his arrest on November 9, 2010 and his release on November 30, 2010. This amounts to 11-3/4 years (141 months), which is about 59% of the full term imposed, and almost 75% of the time (192 months) that would ordinarily be served on a 20-year sentence (after deducting 15% credit for statutory "good conduct time" plus 12 months for First Step Act rehabilitative programming credit). Put another way, the time Mr. Crews has already been incarcerated is equivalent to full service, with good conduct and rehabilitative

[1] The forfeiture judgment was later reconsidered and reaffirmed following the Supreme Court's *Honeycutt* decision. The Court filed an amended judgment (as to forfeiture only) on January 23, 2019. Doc. 660.

programming, of a sentence of exactly 15 years. (Coincidentally, 15 years is the sentence that would likely be imposed today in this case, as discussed in ¶7(ii) below.) Mr. Crews is now over 52 years of age, as his date of birth is October 6, 1971.

3. Mr. Crews is presently incarcerated at the Low Security Federal Correctional Institution, Loretto, Pennsylvania.

4. On September 22, 2023, more than 30 days ago, Mr. Crews requested of the Warden at Loretto that the Bureau seek his release via Reduction in Sentence ("RIS") under 18 U.S.C. § 3582(c)(1)(A)(i), focused on worrisome health symptoms. The request many also have mentioned his excellent conduct and rehabilitative achievements, and a then-anticipated changes in the Sentencing Commission's advisory policy statement, USSG § 1B1.13 (as discussed in ¶7(ii–iii) below).[2]

a. The Warden responded to the September request on October 2, 2023, declining to recommend a sentence reduction, on the basis that Mr. Crews did not satisfy the BOP's own internal criteria for such a recommendation. *See* Exh. A (request and denial). The BOP's "program statement" that governs the Warden's response does not encompass the same range of considerations as the Sentencing Commission "policy statement" which the statute directs this Court to consider. *Compare* BOP Program Statement 5050.50 (2019 rev.),[3] *with* USSG § 1B1.13 (p.s.) (2023 rev.). In particular, the BOP will not recommend a sentence reduction based on debilitated physical condition

[2] Counsel for the defendant-movant is unable to confirm exactly what the September 22 request covered, as Mr. Crews did not think to keep a copy, and his counselor has refused to provide a duplicate.

[3] *Available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf .

unless the inmate is either terminally ill or generally unable to provide self-care. BOP P.S. 5050.50, ¶¶3.a. –3.b.

b. Mr. Crews attempted to renew his request to the institution on October 30, 2023, with specific reference to the fact that he had recently suffered a stroke, but his counselor refused to forward it to the Warden, because the new submission mentioned the amended sentencing law, which his counselor claimed was inappropriate. Accordingly, Mr. Crews' renewed request should be deemed to have been denied.

c. The BOP's rigid internal standards do not apply to this Court's discretionary assessment. Mr. Crews did not appeal the Warden's October 2 ruling, nor was he required by law to pursue any administrative appeal to satisfy the statutory "exhaustion" clause. See *United States v. Harris*, 973 F.3d 170 (3d Cir. 2020) (per curiam) (explaining pre-filing requirement). This Court is now empowered under § 3582(c)(1)(A), as amended by the First Step Act, to consider a sentence reduction on the defendant's own motion.

5. Mr. Crews has not previously moved this Court for Reduction in Sentence.

6. a. As this Court has recognized in discussing the applicable legal framework for motions of this kind,[4] the governing statute directs the Court, in making its decision on a RIS motion, to identify first whether "extraordinary and compelling reasons" exist of a sort that might warrant reconsideration of the sentence under present, changed circumstances, and then to grant the motion if it finds, in its nearly unlimited discretion,[5]

---

[4] See *United States v. Croft*, No. 95-CR-496-JP, 2020 WL 3871313, *1–2, *4 (E.D.Pa., July 9, 2020).

[5] See *United States v. Concepcion*, 597 U.S. —, 142 S.Ct. 2389, 2401 & n.4 (6/27/22) (judicial discretion under § 3582(c)(2) limited only insofar as expressly provided by Congress); accord,

that a reduction is "warrant[ed]" upon reconsideration of "the factors set forth in section 3553(a) to the extent that they are [currently] applicable." 18 U.S.C. § 3582(c)(1)(A)(i).

b. The statute also states that the Court must find that such reduction "is consistent with applicable policy statements issued by the Sentencing Commission." In *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021), the Court of Appeals held that there was no such "applicable" Policy Statement as of that time. Effective November 1, 2023, the Sentencing Commission has now remedied that deficiency, by adopting an amended version of Policy Statement 1B1.13 in conformity with the First Step Act.[6] The policy statement is therefore once again available for guidance, as mandated by 28 U.S.C. §§ 994(a)(2)(C) and 994(t) ("The Commission … shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

7. The Court should therefore look to USSG § 1B1.13 (p.s.), as newly reformulated, for guidance at the first step of its consideration. As elaborated in the following paragraphs of this motion, Mr. Crews presents at least three grounds for the Court to find qualifying "extraordinary and compelling circumstances," as now articulated by the Sentencing Commission:

(a) The first suggested category of reasons (*id.*(b)(1)) involves various combinations of four factors: impaired or deteriorating health, time served, advanced

---

*e.g.*, *United States v. Claude*, 16 F.4th 422 (3d Cir. 2021) (RIS discretion cannot be invoked to evade express restriction in Fed.R.Crim.P. 35(b) that only gov't has standing to file motion to reward post-sentence cooperation).

[6] *Available at* https://www.ussc.gov/guidelines/2023-guidelines-manual/annotated-2023-chapter-1#1b113 .

age, and diminished ability to function in a correctional setting. In particular, consistent with amended USSG § 1B1.13(b)(1)(B)(i) and (iii), Mr. Crews is experiencing deteriorating physical health as he ages and now suffers from a serious medical condition – the sequelae of a recent stroke – that substantially diminishes his ability to care for himself within the environment of a correctional facility, and from which he is unlikely to recover.

(b) Moreover, Mr. Crews' case also presents circumstances falling within the new USSG § 1B1.13(b)(6) (2023 rev.) (criteria for reduction of "unusually long sentences").[7] As a result of an intervening amendment to 21 U.S.C. § 841(b)(1)(A), which governed his sentence for violating *id.* § 846, his second-offender mandatory minimum term of 20 years – of which he has served more than ten years – is 33% longer (a "gross disparity") than the 15-years that would now apply.[8] According to BOP's published statistics, only 15.4% of federal prisoners have sentences of more than 20 years (but less than life; another 2.5% are lifers),[9] making his sentence "unusually long."

(c) Finally, the totality of circumstances, including rehabilitation, may now be considered as "extraordinary and compelling." *See* USSG § 1B1.13(b)(5).[10] Here, in

[7] "(6) *Unusually Long Sentence*.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."

[8] *See* First Step Act § 401(a)(2) (eff. 12/19/2018).

[9] *See* https://www.bop.gov/about/statistics/statistics_inmate_sentences.jsp (accessed 11/4/23).

[10] "(5) *Other Reasons*.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons

combination with his stroke, Mr. Crews' substantial time served, excellent prison record, relatively advanced age (for a federal prisoner), rehabilitation, and strong family support all make him a strong candidate for a sentence reduction to the time already served. Together, these are "similar in gravity to" a qualifying health condition under paragraph (1), even if the stroke alone is not. See, *e.g*., *United States v. King*, 2023 WL 7194866 (N.D.Cal., Nov. 1, 2023) (Breyer, J.).

8. Mr. Crews has been diagnosed and prescribed medication for high blood pressure since at least 2022. In the fall of 2023 he began feeling and reporting disturbing symptoms of dizziness and buzzing or ringing in his ears. During the afternoon of October 15, 2023, he telephoned a family member to say he had no feeling on the left side of his body and a strange noise in his left ear. His requests for urgent medical attention went unheeded until midmorning on October 16, 2023, when he was transported on an emergency basis to an outside medical facility, where he was diagnosed as having suffered an "acute stroke" (an "intracerebral hemorrhage").[11] He remained in the outside hospital until October 19. Upon his return to Loretto, he was not kept in the infirmary but was returned to his regular housing unit.

9. A sentence reduction by the Court under § 3582(c) is not dependent on a finding that the BOP has rendered inadequate medical care or is incapable of providing

described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."

[11] The importance of immediate medical attention in avoiding the long-term effects of a stroke (and in minimizing the risk of death) is well-known. *See* American Stroke Ass'n, "Quick Stroke Treatment Can Save Lives," https://www.stroke.org/en/about-stroke/types-of-stroke/is-getting-quick-stroke-treatment-important (accessed 11/5/23). Copies of BOP and outside medical records, obtained by undersigned counsel under the Privacy Act (FOIA), will be provided to the government and/or to the Court upon request.

care at this time. Nor does the governing statute call upon the Court to give any weight to the Bureau of Prisons' failure to grant an inmate's request for sentence reduction, given its adherence to entirely different criteria.

10. Reconsideration of the applicable factors from 18 U.S.C. § 3553(a), as also required by *id*. § 3582(c)(1)(A), at this time, under present circumstances, giving due respect to this Court's rulings at sentencing about the seriousness of Mr. Crews' offense and his role in that offense, nevertheless leads to the conclusion that reduction at this time of Mr. Crews' term of imprisonment to the time already served is "warrant[ed]." See *United States v. Raia*, 993 F.3d 185, 197 (3d Cir. 2021) ("[T]he question before the Court on the compassionate release motion—*i.e*, whether Raia's sentence should be reduced because of extraordinary and compelling reasons—did not go to the reasons that Raia was sentenced in the first place."). In short:

(a) The "characteristics of the defendant," § 3553(a)(1), now include his serious and likely incurable medical conditions; his prison disciplinary record is excellent; he has taken dozens of courses, including anger management, wellness, parenting, and others; and he has earned the maximum (365 days) of credit toward his sentence under the First Step Act for rehabilitative programming;

(b) Service of more than ten years' imprisonment, amounting to some 75% of the time to be served on the original 240-month sentence, and fully 100% of the 15-year term that would likely be imposed today for the same offenses, adequately reflects the seriousness of the offense and thus satisfies the need to provide just punishment and to

afford adequate deterrence, under subsections (a)(2)(A) and (a)(2)(B),[12] and because service of a sentence while suffering a post-stroke physical disability and other ailments inflicts more punishment in a shorter period of time;

(c) Being over 50 years old, Mr. Crews' age places him in a class of prisoners that is much less likely than average to recidivate.[13] The same is true on account of having no history of drug or alcohol abuse, and because he is married. His physical condition following his stroke realistically forecloses any probability of dangerous recidivism. *See also* USSG § 1B1.13(a)(2) (p.s.) (danger to the community may bar sentence reduction). Mr. Crews' PATTERN score (risk assessment) is low, as is his BOP security rating. After a significant period of incarceration, and having experienced severe medical setbacks, the need to protect the public from further crimes is therefore fully addressed, under subsection (a)(2)(C);

(d) Consideration of providing needed medical care in the most effective manner suggests release rather than continued incarceration, under subsection (a)(2)(D); *see also* USSG § 5H1.4 (p.s.). Mr. Crews' wife is securely employed with the Commonwealth of Pennsylvania (a clerk at the State Police Belmont Barracks); through this employment, she has family health insurance coverage. After ten years' incarceration,

---

[12] Studies, including the government's own, consistently show that marginally longer sentences do not yield increased deterrence. *See* Nat'l Inst. of Justice, *Five Things About Deterrence* (U.S. Dept. of Justice, May 2016), available at www.ncjrs.gov/pdffiles1/nij/247350.pdf .

[13] USSC, *The Effects of Aging on Recidivism Among Federal Offenders* (Dec. 2017), available at https://www.ussc.gov/sites/default/ files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (inmates aged between 50–54 at release had a 16% reconviction rate, as contrasted with 48% for those 21–24, and 36% for 30–34). An inmate over the age of 50 is considered "elderly" by correctional standards. *See* U.S. Dept. of Justice, Office of Inspector Gen'l, "The Impact of an Aging Inmate Population on the Federal Bureau of Prisons" (May 2015), at i–ii.

remarkably, his marriage is stable and he is welcome to return to the family home in Sicklerville, New Jersey (subject, of course, to U.S. Probation Office approval for out-of-district supervision). There, he can manage his own care and have the support of his family,[14] all of which confers a significant psychological advantage, with likely physical health benefits;

(e) Given the wide range in the duration of sentences imposed for similar drug offenses, a reduction in sentence to time served (the equivalent of 15 years) is not inconsistent with the need to avoid unwarranted sentencing disparities, under subsection (a)(6);

(f) Mr. Crews is current in his obligations under the Inmate Financial Responsibility Program. *Cf.* 18 U.S.C. § 3553(a)(7).

(g) Finally, upon consideration of the overall statutory command that every sentence, while sufficient to achieve the objectives identified in subsection (a)(2), must not be "greater than necessary," 18 U.S.C. § 3553(a), the sentence of imprisonment in this case should be reduced to time served on account of the foregoing extraordinary and compelling reasons, allowing Mr. Crews to commence immediately his ten-year term of supervised release (the length of which this Court has authority to modify, or not, in ruling on the instant motion).

---

[14] The younger of the couple's two daughters is a senior in high school, now applying to colleges, and the older daughter is a college student.

WHEREFORE, the defendant prays that this Court grant him a modification of his sentence on the basis of extraordinary and compelling reasons, that is, a reduction in the term of imprisonment to equal the time already served.

Respectfully submitted,

Dated: November 6, 2023

s/*Peter Goldberger*
PETER GOLDBERGER
50 Rittenhouse Place
Ardmore, PA 19003
(610) 649-8200
peter.goldberger@verizon.net

*Attorney for Defendant Crews*

CERTIFICATE OF SERVICE

I filed the foregoing motion today, November 6, 2023, via this Court's CM/ECF system, thus causing it to be immediately and automatically served upon Robert A. Zauzmer, Esq., K.T. Newton, Esq., and James Pavlock, Esq., United States Attorney's Office, Philadelphia, PA.

s/*Peter Goldberger*